**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Liberty Corporate Capital Limited,<br><br>    Plaintiff/Counterdefendant,<br><br>v.<br><br>Jill Marie Steigleman,<br><br>    Defendant/Counterclaimant. | No. CV-19-05698-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Liberty Corporate Capital Limited's ("Plaintiff") Motion for Reconsideration of Discovery Order (Doc. 91). The Court determines that telephonic oral argument will aid its consideration of Plaintiff's Motion. In anticipation of oral argument, Plaintiff is ordered to transmit the items listed in its privilege log (Doc. 52-11) to the Court for in-camera review.

## BACKGROUND

In her original Motion to Compel, Jill Marie Steigleman ("Defendant") sought communications between Liberty and its affiliated entities; its attorneys at Fields Howell LLP; and employees of Hanleigh Management, Inc., and Guy Carpenter & Company who were purportedly involved in the denial of her coverage on January 22, 2019. (Doc. 47 at 2.) Plaintiff asserts that these communications are subject to the attorney-client privilege and has produced a privilege log detailing its objections. (Doc. 52); (Doc. 52-11.) On January 21, 2022, the Court ruled that Plaintiff had waived the attorney-client privilege as

to "all pre-existing communications between Plaintiff and [its attorney] pertaining to the decision to deny Defendant's claim" because it intentionally disclosed its attorney's legal opinion to Defendant. (Doc. 85.) Plaintiff then filed a Motion to Stay (Doc. 90) and a Motion for Reconsideration (Doc. 91).

## DISCUSSION

### I. Legal Standard

"A district court may conduct an in camera inspection of alleged confidential communications to determine whether the attorney-client privilege applies." *Clarke v. Am. Com. Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992). The party asserting the privilege bears the burden of establishing that the privilege applies to the documents in question. *United States v. Lacey*, No. CR-18-422-PHX-SPL, 2019 WL 258344, at *2 (D. Ariz. Jan. 17, 2019). The "proper procedure for asserting the attorney-client privilege as to particular documents" is for the party asserting the privilege to "submit them in camera for the court's inspection, providing an explanation of how the information fits within the privilege." *In re Grand Jury Witness (Salas)*, 695 F.2d 359, 362 (9th Cir. 1982).

In camera review is proper when the party contesting the application of privilege shows a "factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged." *In re Grand Jury Investigation*, 974 F.2d 1068, 1075 (9th Cir. 1992). "If the party makes such a showing, the decision whether to conduct the review rests within the discretion of the district court," "guided by the factors enumerated in" *United States v. Zolin*, 491 U.S. 554 (1989). *Id.* The *Zolin* factors require the Court to consider

> the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through in camera review, together with other available evidence then before the court, will establish that the [attorney-client privilege] does apply.

*See Zolin*, 491 U.S. at 572.

//

## II. Analysis

Defendant has provided a factual basis to support a reasonable, good faith belief that in camera review "may reveal evidence that information in the materials is not privileged," namely that instead of providing legal advice, Fields Howell was involved in determining Defendant's claim. *In re Grand Jury*, 974 F.2d at 1075. Plaintiff retained Fields Howell on October 22, 2018.[1] (Doc. 52-11 at 12.) On November 1, 2018, Mr. Graham Southall, Hanleigh's Chief Underwriting Officer, informed Defendant that "Underwriters have asked that your claim be reviewed by" Fields Howell, and that "[w]e will revert as soon as we receive a determination." (Doc. 47-4 at 5.) After October 22, Plaintiff's privilege log reflects that Mr. Greg Mast, from Fields Howell, was involved in several lengthy email chains about Defendant's claim, which culminated in him drafting a letter dated January 22, 2019, denying Defendant's claim on behalf of Plaintiff. (Doc. 52-11.)

In a deposition, Plaintiff's 30(b)(6) witness, Ms. Julie Tripp, asserted that Mr. Matthew Phillips, a claims adjuster employed by Plaintiff, had determined Defendant's claim, and that he did so without seeking legal advice. (Doc. 91-1 at 4, 9.) Ms. Tripp further testified that she believed Mr. Phillips made this determination sometime before November 1, 2018, (Doc. 91-1 at 10), and that she learned Mr. Phillips made the determination from counsel. (Doc. 95-6 at 4.) Plaintiff has not indicated a precise date on which Mr. Phillips is alleged to have made this determination, nor has Plaintiff provided the Court with any contemporaneous documentation of this determination. As a result, the Court cannot conclude with any certainty that a coverage determination had in fact been made before November 1, 2018. In camera review will reveal whether such a determination had in fact been made prior to the retention of Fields Howell, which will aid the Court in concluding whether the attorney-client privilege has been impliedly waived.[2]

---

[1] In its briefing, Plaintiff claims that Fields Howell was retained on October 22, 2019. (Doc. 52 at 2.) But Plaintiff's privilege log indicates that Fields Howell was retained on October 22, 2018, and includes detailed correspondence between Fields Howell and other individuals in late 2018. (Doc. 52-11 at 12.)

[2] Even if the documents bear out Plaintiff's assertion that Mr. Mast was not involved in the determination of the claim and that Liberty or its underwriters instructed Mr. Mast as to the appropriate content of the letter denying the claim, it is not clear that any such

Turning to the *Zolin* factors, the Court concludes that in camera review is appropriate at this time. *See Zolin*, 491 U.S. at 572. First, the volume of materials would be, at most, 540 pages. (Doc. 52-11 at 14.) However, much of this material appears to have been generated after January 22, 2019, when the coverage determination was communicated to Defendant. While the Court will review all documents in the log, the Court anticipates dedicating the bulk of its attention to a fraction of the total documents produced. Therefore, this factor weighs in favor of in camera review. Second, Defendant claims that the communications at issue pertain to Plaintiff's decision to deny her coverage under her policy. Because Defendant argues Plaintiff reached this decision in bad faith, (Doc. 25 at 27–28), the content of the communications would be of utmost importance to her case if they were not privileged. This second factor also weighs in favor of in camera review. Finally, the communications that would be produced through in camera review, combined with Plaintiff's privilege log and other evidence before the Court, would allow the Court to determine whether the attorney-client privilege would apply because the Court will be able to determine whether Fields Howell provided legal advice in the communications at issue. Therefore, all three *Zolin* factors weigh in favor of review.

## CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff shall transmit all documents listed in its privilege log (Doc. 52-11) to the Court for in camera review on or before **February 18, 2022.**

**IT IS FURTHER ORDERED** this matter is set for Telephonic Oral Argument on **February 25, 2022 at 11:00 a.m.** Plaintiff's counsel shall arrange a call-in number on or before **Noon on February 23, 2022** and disseminate the number to all parties, including the Court. Both sides will be given fifteen minutes.

**IT IS FURTHER ORDERED** directing the parties to utilize landlines for this telephonic oral argument to avoid challenges posed by the use of cell phones, headsets, or

---

communication by Liberty or its underwriters to Mr. Mast would be protected by the attorney-client privilege, because it may not have been a communication "for the purpose of securing or giving legal advice." *Roehrs v. Minn. Life Ins. Co.*, 228 F.R.D. 642, 645 (D. Ariz. 2005).

other devices.  This will enable clear communication with the Court and accurate transcription by the Court Reporter.

Dated this 16th day of February, 2022.

_G. Murray Snow_
G. Murray Snow
Chief United States District Judge